**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| KEVIN MARTIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00161-TWP-TAB |
| | ) | |
| ALLEN Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DIRECTING ENTRY OF FINAL JUDGMENT**

Kevin Martin's petition for a writ of habeas corpus challenges his conviction and sanctions in prison disciplinary case ISR 24-10-2850. For the reasons below, his petition is **denied,** and this action is **dismissed with prejudice**.

## I.   Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On October 7, 2024, Sergeant J. Miller wrote a conduct report in case ISR 24-10-2850 charging Mr. Martin with offense B-213, threatening. Dkt. 9-1. The conduct report stated:

> On 10/7/24 at approx. 1:55pm, Offender Martin, Kevin 169789 returned to the cellhouse. At this time, I spoke with him about rolling in on time when he returns from lines and he was secured in his cell 17-4B. I then walked the 4B range and Martin stopped me to ask why I said something about rolling in on time. Officer A. Dunder approached the cell at this time and was present. As I was speaking to him, he became irate, threw his glasses down and started screaming threats. Some of the threats were "I bet you wont say shit when Im out of this cell you honkey piece of shit," Im going to sue the shit out of you! and "Im not scared of you bitch watch and see when Im not behind this door!"

*Id.* (original errors).

On November 4, 2024, the screening officer notified Mr. Martin of the charge B-213, threatening, and provided him with a copy of the conduct report and the disciplinary hearing notice (screening report). Dkt. 9-2. Mr. Martin pleaded not guilty. *Id.* Mr. Martin requested witness statements from Officer Davis to answer, "Did I check to [see] if you called me for property?" and Ms. Bookout to answer, "Was Martin on an attorney call that day?" Dkt. 9-2. He also requested "Proof that the case load was too much," and video review "From H to show it wasn't a line movement, from custody hall to show I went up there." *Id.* All these requests were denied as irrelevant. *Id.* In addition, Mr. Martin requested "Proof that Sgt. Miller failed to get a statement from Ofc. Dunder." *Id.* This request was denied because the witness statement was uploaded the day of the conduct. *Id.*

In an additional evidence request dated November 1, Mr. Martin stated that he wanted statements from inmates in nearby cells to show that Mr. Martin did not threaten Sergeant Miller and that the sergeant "set this up" by claiming Mr. Martin had a lawyer call up front. Dkt. 9-3 at 1. He wanted a statement "by both inmate [sic] and statement from c/o Travline deal with Martin

2

come up there on 10-7-24 [sic]." *Id.* Mr. Martin wanted a statement from property officer Davis "that I was up there because I did no way I was call up there Sgt Miller said Lawyer call show this was a set up plan to get Martin move out of HcH." *Id.* He wanted a statement from Ms. Bookout to say she called him to custody hall on October 7. *Id.*

Mr. Martin also requested video tape from H cell house from October 7 from 12:30 pm. through 4:30 p.m. to show Sergeant Miller "at the control box open Martin cell door to go to Lawyer call that was lie. If I did leave the cell. I would be here." *Id.*

Offender Johnson provided the following statement to answer, "Did I threaten Sgt. Miller?": "No Martin never said any threat to Sgt. Miller. I as the mediator was right there listened to both of them speak to each other and he never said he will harm or do anything violent to Miller. Miller lied on him because for him to go to lock up for them talking to each other without any threat didn't make since. Miller got mad because he was wrong and told Martin youre going to lock up and Miller took him to lock up and Kevin Martin was asking for what." Dkt. 9-5 (original errors).

Officer Dunder provided the following statement:

On 10/7/24 at approx. 1:55pm, incarcerated individual Martin, Kevin 169789 was being rolled into his cell by Sgt J. Miller and myself. I asked Sgt J. Miller to help me walk this particular incarcerated individual to their cell because they have not been cooperating when I have told them to return to their cell as they stop by all the cells on other way and talk for long periods of time. Sgt J. Miller and I then walked down the range to make sure all the doors closed completely and, on our way back I.I Martin asked to speak to Sgt. Miller to tell him I was lying about him not rolling in. He then proceeded to threaten Sgt. Miller and myself stating once he got out he was going to shoot us to which he then changed what he stated to he was going to "sue" us. He also had some other choice things to say such as "I bet you won't say shit when I'm out of this cell you honkey piece of shit" which he stated toward Sgt. Miller and I'm going to sue the shit out of you!

Dkt. 9-6.

On November 12, Mr. Martin pleaded not guilty at his hearing and stated: "It's not a threat. So what if I called him a honkey? Threat is when you threaten physical harm. There's no gun in here. How am I gonna shoot him? It was a[n] arbitrary decision." Dkt. 9-4 at 2.

The disciplinary hearing officer (DHO) found Mr. Martin guilty of B-213, threatening, based on staff reports and evidence from witnesses. *Id.* The DHO explained, "Relied on staff statement that I.I. Martin was intimidating Sgt. Miller. Most evidence was denied due to being irrelevant." *Id.* The DHO imposed a one-step demotion in credit class and other non-grievous sanctions. *Id.*

Mr. Martin's appeals were denied and this habeas action followed.

### III. Discussion

Mr. Martin's claims are discerned as: (1) denial of witnesses and evidence; 2) DHO was not impartial; 3) denial of advance notice of charge; 4) insufficient evidence; and 5) violations of Indiana Department of Correction (IDOC) policy. Dkt. 1.

### A.  Denial of Evidence

Mr. Martin first argues that his requests for various statements and evidence were denied. He asserts that his request for offender Johnson's witness statement was denied, but this claim is factually incorrect. Mr. Johnson's exculpatory statement *was* considered by the DHO. Dkt. 9-5; dkt. 9-4 at 5. Mr. Martin's claim that he was denied a statement from Officer Dunder is also factually incorrect. That statement was submitted and considered by the DHO. Dkt. 9-2 at 2; dkt. 9-5.

Mr. Martin also contends that he was denied video evidence requested to show that the incident did not involve a line movement as stated in the conduct report. This evidence, however,

was denied as irrelevant because it would not have audio of what Mr. Martin said to Sergeant Miller. Dkt. 9-2 at 2; dkt. 9-11 at 2.

Mr. Martin's requests for proof that the caseload caused a delay in screening, a statement from Ms. Bookout as to whether he was on attorney call that day, and a statement from Officer Davis about calling Mr. Martin for property, were all denied because they were not relevant to the question of whether Mr. Martin threatened Sergeant Miller. Dkt. 9-2 at 2. Finally, Mr. Martin requested statements from inmates in nearby cells to show that he did not threaten Sergeant Miller. The statement submitted by inmate Johnson stated that Mr. Martin did not threaten the sergeant.

Petitioners "must be allowed to present *relevant* evidence, including witness testimony, unless it is cumulative or unduly threatens the security of the facility." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016) (emphasis added). The denial of requested evidence for lack of relevance did not violate due process.

Due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The petitioner has the burden of establishing that the evidence he was denied was material and exculpatory. *Piggie,* 344 F.3d at 678. "Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017).

Here, Mr. Martin has not shown that any evidence not produced would have created a reasonable probability of finding him not guilty of threatening Sergeant Miller. The denial of evidence claims are denied.

## A.  Impartial Decisionmaker

Mr. Martin next contends that the DHO issued an arbitrary decision that was patently unreasonable and not based on the facts.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666.  Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof."  *Id.* at 667.

Although Mr. Martin clearly disagrees with the DHO's finding of guilt, he does not assert that the DHO was improperly involved in the investigation of the incident, nor has he shown clear evidence of bias. The presumption that the DHO was impartial prevails under these circumstances.

## C.  Lack of Advance Notice

Mr. Martin argues that he was not given 24 hours' notice before he was found guilty of "intimidation." This claim lacks merit because Mr. Martin was given notice of the charge of "threatening" more than 24 hours before the hearing. Dkt. 9-2. "Threatening," B213, is defined by the IDOC as "engaging in any of the following: Communicating to another person an intent to

physically harm, harass or intimidate that person or someone else…." Dkt. 9-9 at 5. Therefore, one element of the offense of "threatening" is whether the petitioner communicated an intent to harm, harass, or intimidate. *Id.* Mr. Martin was not charged with nor found guilty of "intimidation."

### D. Insufficient Evidence

Next, Mr. Martin argues that the evidence did not support a finding that he threatened the officer. At the hearing he questioned how he could threaten anyone without a gun. Dkt. 9-4 at 2. He argues that he did not threaten any physical harm. *Id.* As discussed above, statements that intimidate another person are sufficient to constitute "threatening" without threatening actual physical harm or use of a gun.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

In this case, the conduct report was enough to satisfy the evidentiary threshold. Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011). The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). It is the DHO's role, not the Court's, to determine which witnesses are credible. There was sufficient evidence to support the DHO's finding that Mr. Martin had intimidated/threatened Sergeant Miller.

### E.  Violations of IDOC Policy

Finally, Mr. Martin lists several IDOC policies that were allegedly violated during his disciplinary proceedings. Those policies involved the timing of the conduct report and his screening, requirements of certain staff to provide a written statement, and requirements of DHOs to document why a request for video was denied. Dkt. 1 at 12-15.

The federal habeas statute permits a state inmate to challenge the duration of his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Mr. Martin's alleged violations of IDOC policy do not state cognizable claims for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("state-law violations provide no basis for federal habeas review."); *Keller v. Donahue,* 2008 WL 822255, 271 Fed. Appx. 531, 532 (7th Cir. Mar. 27, 2008) (an inmate "has no cognizable claim arising from the prison's application of its regulations."). These claims fail.

### IV.  Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Martin to the relief he seeks. Accordingly, Mr. Martin's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 4/8/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

KEVIN MARTIN
169789
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
ben.jones@atg.in.gov